## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ENDURANCE AMERICAN SPECIALTY
INSURANCE COMPANY, ET AL.

        Plaintiffs,

        v.

WILLIAM KRAMER & ASSOCIATES, LLC,
ET AL.

        Defendants.

No. 3:18-cv-00192 (MPS)

## RULING ON WKA'S MOTION TO DISMISS

Endurance American Specialty Insurance Company ("Endurance") brought this action on February 1, 2018, against William Kramer & Associates, LLC ("WKA"), a loss adjustment firm, related to WKA's assessment of damages to the Caravelle Resort in Myrtle Beach, South Carolina following Hurricane Matthew. ECF No. 1. Two additional property insurers of the Caravelle Resort, James River Insurance Company and AXIS Surplus Insurance Company, intervened as plaintiffs (hereinafter Endurance, AXIS, and James River collectively referred to as "the Plaintiffs"). *See* ECF Nos. 32, 34. The Plaintiffs assert negligence claims and a claim for breach of fiduciary duty against WKA related to its adjustment of the losses at the Caravelle Resort. ECF No. 126 at 6-8.

On August 31, 2018, WKA filed third-party complaints for common law indemnification against Madsen Kneppers and Associates, Inc. ("Madsen") and York Risk Services Group, Inc. ("York"). ECF No. 58-59. Madsen filed a motion to dismiss WKA's third-party complaint, which I granted on August 15, 2019. ECF No. 121. On October 1, 2019, the Plaintiffs amended their complaint to assert a negligence claim against Madsen. ECF No. 126 at 9 (Count Four).

Madsen filed an Amended Answer, Affirmative Defenses and Cross-Claims against WKA and York. ECF No. 146. The cross-claims against WKA assert contractual indemnification (Count One), common law indemnification (Count Two), and apportionment and contribution (Count Three). ECF No. 146 at 12-13 ¶ 9, 13 ¶ 6, 14-15 ¶ 4. WKA moves to dismiss Counts Two and Three under Fed. R. Civ. P. 12(b)(6). ECF No. 148 at 2. For the reasons set forth below, the motion to dismiss is GRANTED in part and DENIED in part.

## I.    FACTUAL ALLEGATIONS

The following facts are drawn from the operative complaints, including the Plaintiffs' First Amended Joint Complaint, ECF No. 126, and Madsen's Amended Answer, Affirmative Defenses and Cross-claims. ECF No. 146.[1] The factual allegations are accepted as true for the purposes of this ruling.

On "October 8, 2016, Hurricane Matthew impacted Myrtle Beach, South Carolina, causing [The] Caravelle [Resort] ('Caravelle') to sustain damage." ECF No. 126 ¶¶ 8, 15. Caravelle held insurance policies issued by Endurance, Liberty, James River, and AXIS. *Id.* at ¶¶ 9-12.[2] On "October 10, 2016, Caravelle submitted its claim to the [Plaintiffs] for the damages alleged to have been sustained due to Hurricane Matthew (the 'Claim')." *Id.* at ¶ 16. WKA, "an independent loss adjusting firm who acts on behalf of insurance companies, including the [Plaintiffs]," was "the designated loss adjuster pursuant to the terms of the [Plaintiffs'] policies and was assigned to adjust

---

[1] "The cross-claim must be construed against the background of the complaint, for it is only if the plaintiffs prevail against [the cross-claim plaintiffs] that they would have any basis to seek indemnity against [the cross-claim defendant]. Further, it is only on grounds alleged against [the cross-claim plaintiffs] that plaintiffs could prevail against them." *Cimino v. Yale Univ.*, 638 F. Supp. 952, 958 (D. Conn. 1986).

[2] The policies consisted of a primary layer of $10 million, divided evenly between Endurance and Liberty, and an excess layer of $34 million, divided evenly between AXIS and James River. *Id.* at ¶ 12.

all claims made against the [Plaintiffs'] policies." *Id.* at ¶¶ 13-14. "On October 14, 2016, WKA representatives arrived on site at Caravelle to begin its inspection and assessment of the storm related damage." *Id.* at ¶ 18. At that time, "WKA had a duty in adjusting the Claim to retain experts, if necessary, to assist them in understanding the loss, determining the extent of the damage proximately caused by Hurricane Matthew and to take such steps as were necessary to mitigate the potential for future damage." *Id.* at ¶ 19.

"After an initial assessment of damage, it became apparent that WKA would require additional assistance; therefore, on or about October 18, 2016, the construction consulting and engineering firm, Madsen[,] was retained by WKA, on behalf of the [Plaintiffs] to assist in the investigative and adjusting process." *Id.* at ¶ 20. "Among Madsen's responsibilities was to identify and estimate the cost of the damage proximately caused by Hurricane Matthew and develop protocols for remediation and repairing the damage caused by Hurricane Matthew." *Id.* at ¶ 21. "Madsen was designated to report its findings and recommendations to WKA for publication to the [Plaintiffs]." *Id.* at ¶ 22. The initial estimate totaled $2,900,000, but "over the next weeks, the loss estimate continued to rise substantially." *Id.* at ¶¶ 23-24. "Concerned by the precipitous rise in WKA's and Madsen's damage assessment, the Excess Layer retained an independent adjusting firm to peer review WKA's work on the project and to act as the loss adjuster on behalf of AXIS and James River." *Id.* at ¶ 25. "On or around December 30, 2016, WKA estimated a total loss value of $18,000,000." *Id.* at ¶ 26. "On or around January 27, 2017, [the Plaintiffs] agreed to resolve Caravelle's Claim for approximately $24,000,000. . . ." *Id.* at ¶ 27.

The Plaintiffs allege that "[WKA and Madsen] repeatedly and consistently failed to disclose to the [Plaintiffs] material facts and issues, including that Caravelle's claimed damages

3

were either from preexisting mold or not proximately caused by Hurricane Matthew." *Id.* at ¶ 29. "Madsen informed WKA that certain rooms that had been designated for reconstruction because of moisture had no evidence of mold growth," but that information "was never relayed … to the [Plaintiffs]." *Id.* at ¶¶ 31, 33. "Thus, the [Plaintiffs] relied upon [WKA's and Madsen's] representations regarding the scope and cost of damages without being informed that much of the continuing remediation costs, as well as the costs of certain repairs and reconstruction was unwarranted or unrelated to Hurricane Matthew damage." *Id.* at ¶ 34. "Because of [WKA's and Madsen's] failure to disclose relevant and material information to the [Plaintiffs] about the source and extent of the damage, the [Plaintiffs] ultimately paid for the rehabilitation of the entire Resort, rather than for the Hurricane Matthew-specific damages." *Id.* at ¶ 36.

The Plaintiffs assert claims against WKA for negligence. ECF No. 126 at 6-8. They allege, among other failures, that WKA "failed to advise the [Plaintiffs] that a significant amount of the assessed damage was actually preexisting and not covered by the [Plaintiffs] policies." *Id.* at ¶ 41. The Plaintiffs also allege that "WKA owed a duty to the [Plaintiffs] to take those necessary actions to mitigate the damage and to safeguard [Caravelle] to prevent further damage from occurring." *Id.* at ¶ 47. "WKA breached its duty owed to the [Plaintiffs] by failing to protect the site, allowing additional damage to occur, failing to document the pre-existing mold damage to allow it to be distinguished from mold damage caused as a result of water intrusion during Hurricane Matthew, and by failing to estimate and compare the cost to remediate the water damage, mold damage, and construction costs as opposed to the cost of gutting and rehabilitating the units." *Id.* at ¶ 48. "As a direct and proximate result of WKA's breach of its duty owed to the [Plaintiffs], the [Plaintiffs] made indemnity payments to Caravelle far in excess of what would have been paid if Madsen had acted reasonably." The Plaintiffs also assert that

4

WKA breached its fiduciary duty by, among other failures, "failing to disclose to the [Plaintiffs] that a significant amount of the assessed damage was actually preexisting and not covered by the [Plaintiffs'] policies" and "failing to safeguard the site to prevent further damage from occurring." *Id.* at ¶ 54.

The Plaintiffs also assert a negligence claim against Madsen for breaching its duty "to act in a manner consistent with the level of care and skill ordinarily exercised by other professional consultants retained to assist in the investigation, documentation, repair and adjustment of insurance claims for large weather-related losses." *Id.* at ¶ 58. The Plaintiffs further allege that Madsen, among other things, "fail[ed] to perform an appropriate and adequate site inspection and moisture survey, fail[ed] to determine an appropriate scope or pricing to repair interior storm damage caused by Hurricane Matthew," "fail[ed] to take necessary steps to mitigate the damage to Caravelle," and "fail[ed] to safeguard the site to prevent further damage from occurring." *Id.* at ¶ 60.

In its cross-claims against WKA, which are the subject of this motion, Madsen alleges that "[i]f Plaintiff[s] sustained the damages alleged in the Complaint, … these damages were the direct, immediate result of the active negligence of WKA in performing its adjusting services … [and] any negligence by Madsen was passive." ECF No. 146 at 13 ¶ 2. Madsen further alleges that it "did not know … and had no reason to anticipate that WKA would be negligent in providing its adjusting services, including that WKA failed to properly determine an appropriate scope or pricing to repair interior storm damage caused by Hurricane Matthew, failed to properly audit the contractors' costs, and/or failed as designated adjuster to disclose relevant and material information to Plaintiffs about the source and extent of the damage." *Id.* at 13 ¶ 3. According to Madsen, "[i]f Plaintiffs sustained the losses and/or damages alleged in the Complaint, …  said

losses and/or damages were caused in whole or in part by the negligence of WKA, … including without limitation in that WKA . . . failed to properly monitor repairs . . . to make appropriate recommendations concerning the adjustment of the Claim, and/or otherwise failed to properly perform its adjusting duties." *Id.* at 14 ¶ 2.

Madsen's claims against WKA appear in three counts. The first seeks contractual indemnification (Count One), the second seeks common law indemnification (Count Two), and the third seeks statutory and common law apportionment as well as contribution (Count Three). *Id.* at 11-15. WKA's motion concerns only Counts Two and Three.

## I.     LEGAL STANDARD

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine whether plaintiffs have alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ray v. Watnick*, 688 F. App'x 41 (2d Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and internal quotation marks omitted)). While the Court must "draw all reasonable inferences in favor of the non-moving party," *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008), it must grant the moving party's motion if "a complaint is based solely on wholly conclusory allegations and provides no factual support for such claims. . . ." *Scott v. Town of Monroe*, 306 F.Supp.2d 191, 198 (D. Conn. 2004). "Accordingly, 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (brackets omitted).

## II.    DISCUSSION

### A.  Indemnification (Count Two)

In Connecticut, "[o]rdinarily there is no right of indemnity or contribution between joint tort-feasors. . . . Where, however, one of the defendants is in control of the situation and his negligence alone is the direct immediate cause of the injury and the other defendant does not know of the fault, has no reason to anticipate it and may reasonably rely upon the former not to commit a wrong, it is only justice that the former should bear the burden of damages due to injury." *Kyrtatas v. Stop & Shop, Inc.*, 535 A.2d 357, 358 (Conn. 1988) (internal quotation marks and citations omitted). "To assert a claim for indemnification . . . a[] defendant must show that: (1) the party against whom the indemnification is sought was negligent; (2) that party's active negligence, rather than the defendant's own passive negligence, was the direct, immediate cause of the accident and the resulting injuries . . . ; (3) the other party was in control of the situation to the exclusion of the defendant seeking reimbursement; and (4) the defendant did not know of the other party's negligence, had no reason to anticipate it, and reasonably could rely on the other party not to be negligent." *Smith v. New Haven,* 779 A.2d 104, 110-11 (Conn. 2001).

WKA argues that Madsen's claim for indemnification should be dismissed because Madsen "has failed to do more than assert conclusory recitations of the elements" to satisfy the second element—active/passive negligence, and because "no reasonable fact-finder could determine that WKA had exclusive control of the situation"—the third element. ECF No. 148 at 7. I agree.

#### 1.  Active/Passive Negligence

Connecticut courts distinguish between "active or primary negligence," and "passive or secondary negligence." *See, e.g., Crotta v. Home Depot*, 732 A.2d 767, 772 (Conn. 1999). "Indemnity shifts the impact of liability from passive joint tortfeasors to active ones." *Skuzinski*

*v. Bouchard Fuels, Inc.*, 694 A.2d 788, 790 (Conn. 1997). "Primary, active negligence is the direct, immediate cause of the accident and the resulting injuries. Passive negligence is generally limited to constructive or technical fault, as where an owner of property is held liable for an injury on his property resulting from a dangerous condition caused by another working on his property. To allege this second element of an indemnification claim, a third-party plaintiff must not only allege that the third-party defendant is actively negligent, it must also allege facts to plausibly suggest that it is merely passively negligent." *O & G Indus., Inc. v. Aon Risk Servs. Ne., Inc.*, No. 3:12-CV-723, 2013 WL 4737342, at *5-6 (D. Conn. 2013) (concluding that the allegations did not raise a plausible claim of active and passive negligence) (internal quotation marks and citations omitted).

Here, the Plaintiffs have alleged that Hurricane Matthew caused damage to Caravelle on October 8, 2016. ECF No. 126 at ¶ 15. On October 18, 2016, WKA retained Madsen to "assist in the investigative and adjusting process." *Id.* at ¶ 20. Madsen was to "identify and estimate the cost of the damage proximately caused by Hurricane Matthew and develop protocols for remediation and repairing the damage caused by Hurricane Matthew." *Id.* at ¶ 21. In addition, it was to "report its findings and recommendations to WKA for publication to the [Plaintiffs]." *Id.* at ¶ 22. Both "WKA and Madsen owed duties to the [Plaintiffs] as the [Plaintiffs'] agents to fairly and adequately investigate and evaluate the claim." *Id.* at ¶ 28. "Nevertheless [WKA and Madsen] repeatedly and consistently failed to disclose to the [Plaintiffs] material facts and issues, including that Caravelle's claimed damages were either from preexisting mold or not proximately caused by Hurricane Matthew." *Id.* at ¶ 29 .

These facts, taken as true, suggest that WKA *and* Madsen were *both* actively negligent and that neither was passively negligent. Nor does Madsen allege facts in its cross-claim that

suggest that it was passively negligent. Madsen merely makes the conclusory statement that "any negligence by Madsen was passive." ECF No. 146 at 13 ¶ 2. Madsen alleges no facts suggesting that it "did not know or, and had no reason to anticipate, that WKA would be negligent in providing its adjusting services. . . ." *Id.* 13 ¶ 3. Indeed, the facts alleged in the Plaintiffs' complaint belie Madsen's conclusory allegations of passive negligence.  Under the facts alleged by the Plaintiffs, Madsen was involved in assisting WKA with the loss adjustment, engaged in conduct together with WKA that produced a "precipitous rise" in the damages assessment, and failed in its duties to "assist in the investigation, documentation, repair and adjustment of insurance claims" on the Plaintiffs' behalf. ECF No. 126 at ¶¶ 25, 58, 60. Madsen's conclusory allegations aside, the pleadings set forth no facts that would make it plausible that Madsen was passively negligent.

> ### 2.  *Control*

The pleadings also do not support a plausible claim that WKA had "exclusive control" over the estimate, adjustment, and mitigation process that ultimately caused the Plaintiffs' injury. The Plaintiffs allege, in addition to the allegations previously discussed, that Madsen "raised concerns directly with WKA that rooms determined to be unaffected by Hurricane Matthew were nonetheless designated for reconstruction." ECF No. 126 ¶ 30. "Based on [WKA's and Madsen's] evaluation of the damage[,] [WKA and Madsen] knew, or should have known, that the costs to remediate and repair . . . was going to greatly exceed the cost of gutting and rehabilitating the property." *Id.* at ¶ 32. At a minimum, the Plaintiffs' allegations suggest that Madsen was making evaluations of the damage, submitting them to WKA, and raising concerns to WKA but not disclosing such information to the Plaintiffs. None of this is consistent with the notion that WKA was in "exclusive control" over the situation that gave rise to the Plaintiffs'

injury. Madsen's only allegation in support of that notion is its conclusory statement that "WKA was in control of the above-referenced adjusting services to the exclusion of Madsen." ECF No. 146 at 13 ¶ 5.

Madsen "requests permission to replead as permitted by the Federal Rules of Civil Procedure." ECF No. 158 at 9. I decline Madsen's request because Madsen had notice of WKA's arguments and had an opportunity to address those arguments. When York moved to dismiss Madsen's cross-claims on December 23, 2019, it argued that Madsen had failed to allege facts suggesting active/passive negligence and exclusive control—the same argument that WKA makes. ECF No. 145 at 15-18. Madsen filed its amended answer and cross-claims the following day, December 24, 2019, on notice of those arguments. ECF No. 146. Furthermore, Madsen has offered no explanation as to how it could plead around this flaw to assert facts sufficient to plead a cross-claim for indemnification. Indeed, as suggested above, the allegations in the Plaintiffs' complaint – which, of course, Madsen is not in a position to replead – foreclose the possibility that Madsen could plead a plausible indemnity claim here. I therefore deny Madsen's request to re-plead and dismiss the cross-claim for indemnification.

## B.   Apportionment (Count Three)

Madsen seeks "an apportionment of liability pursuant to the doctrine of common law or equitable apportionment and/or statute." ECF No. 146 at 15 ¶ 5. Because I conclude that Madsen's claim for statutory apportionment is plausible, I need not address its common law claim. [3] Section 52-572h(c), of the Connecticut General Statutes "governs the apportionment of liability among multiple tortfeasors." *Crotta*, 732 A.2d at 77. This statute provides as follows:

---

[3] If I did, however, I would likely reach the same conclusion I reached as to Madsen's common law apportionment claim against York, which is that it would be premature to dismiss such a claim at the motion to dismiss stage. *See* ECF No. 188 at 13.

> In a negligence action to recover damages resulting from personal injury, wrongful death or damage to property . . . if the damages are determined to be proximately caused by the negligence of more than one party, each party against whom recovery is allowed shall be liable to the claimant only for such party's proportionate share of the recoverable economic damages and the recoverable noneconomic damages.

WKA argues that Madsen's apportionment claim falls outside the purview of this statute and should be dismissed because the Plaintiffs' complaint "does not assert a negligence claim for damages resulting from personal injury, wrongful death or property damage." ECF No. 148 at 10. According to WKA, the apportionment claim arises out of "purely monetary damages resulting from allegedly negligent services provided in the course of adjusting the Claim." *Id.* at 9. I disagree.

The only potentially applicable portion of the statute is "damages resulting from . . . property damage," as neither Madsen nor WKA suggests that personal injury or wrongful death is implicated here. Connecticut law is clear that the apportionment statute does not apply to "purely commercial losses"—claims seeking compensation for commercial losses unaccompanied by physical damage to tangible property. *See Williams Ford, Inc. v. Hartford Courant Co.*, 657 A.2d 212, 224 (Conn. 1995) ("As a matter of statutory interpretation, therefore, we simply cannot stretch the meaning of 'damage to property,' as used in § 52–572h(b), to include commercial losses unaccompanied by physical damage to or loss of use of tangible property. In light of this legislative language and history, therefore, we conclude that the term 'damage to property,' as used in § 52–572h, does not include purely commercial losses."). [4]

---

[4] Although *Williams Ford* addressed "damage to property" in Section 52-572h(b), rather than subsection (c), the subsection involved in this case, there is no reason to believe it would interpret the same phrase differently in another subsection of the same statute. *See, e.g., Brown v. Gardner*, 513 U.S. 115, 118 (1994) (referring to the "presumption that a given term is used to mean the same thing throughout a statute"); *see also 25 Beechcroft Road, LLC v. Ciuffo*, 2012 WL 2149649, *6 (Conn. Super. Ct., J.D. Stamford-Norwalk, May 16, 2012) ("Although *Williams Ford* discussed the meaning of the phrase 'damage to property' under § 52–572h(b),

Connecticut trial courts have held that the fact that a negligence case involves property does not, without more, make it a "negligence action to recover damages resulting from … damage to property" within the meaning of Section 52-572h(c). *See, e.g., Lunsford v. Goodwin*, No. CV-1160153S, 2011 WL 7095161, *3 (Conn. Sup. Ct. J.D. New Haven, December 28, 2011) (dismissing apportionment claim against third party defendants in negligent misrepresentation case involving sale of home in which misrepresentations allegedly led plaintiffs to pay "more than the property's fair market value"); *25 Beechcroft Rd., LLC v. Ciuffo*, FSTCV116008939S, 2012 WL 2149649, *6-8 (Conn. Sup. Ct., J.D. Stamford-Norwalk, May 16, 2012) (granting motion to dismiss apportionment claim where complaint alleged that architect defendant deviated from standard of care in designing house and thereby rendered the house "not sellable" within the local real estate market; complaint sought "pure economic losses," even though it "may imply that the property required repairs so that it conformed with the plans").

Count Three of Madsen's cross-claim does, however, fall within the purview of the apportionment statute, because the underlying complaint alleges that the economic damages the Plaintiffs incurred stemmed in part from property damage that took place after Hurricane Matthew and that resulted from WKA's and Madsen's negligence. Specifically, the Plaintiffs allege that WKA "fail[ed] to take the necessary actions to mitigate the damage" and "fail[ed] to protect the site, allowing additional damage to occur," and that Madsen similarly "fail[ed] to take necessary steps to mitigate the damage to Caravelle" and "fail[ed] to safeguard the site to prevent further damage from occurring." ECF No. 126 ¶¶ 48, 54, 60. Although the Plaintiffs also allege other failures on the part of WKA and Madsen unrelated to property damage, the allegations

---

courts have held that this interpretation of 'damage to property' is also applicable to § 52–572h(c)." (internal quotation marks omitted; citing cases).

concerning the failure to safeguard the property to prevent further harm suffice to warrant a plausible inference that the Plaintiffs' damages stemmed in part from property damage and that such damages may be "determined to be proximately caused by the negligence of more than one party" such that "each party against whom recovery is allowed" would be "liable to the claimant only for such party's proportionate share of the recoverable economic damages." Conn. Gen. Stat. § 52-572h(c). Madsen has therefore pled a plausible claim within the apportionment statute, and I deny WKA's motion to dismiss as to the apportionment claim.

### C.  Contribution (Count Three)

Finally, Madsen seeks, as an alternative form of relief in Count Three, "contribution to the extent permitted by law." ECF No. 146 at 14-15 ¶ 4. WKA argues that this claim should be dismissed on the ground "that a judgment [must] first be rendered against a party before that party may bring a claim for contribution." ECF No. 148 at 10. I agree.

"[C]ontribution involves a claim for reimbursement of a share of a payment necessarily made by the claimant which equitably should have been paid in part by others." *Crotta v. Home Depot, Inc.*, 732 A.2d 767, 772 (Conn. 1999) (internal quotation marks and citation omitted). "A right of contribution arises only after a judgment has been rendered." *Associated Constr. / AP Constr., LLC v. Hanover Ins. Co.*, No. 3:15-CV-1600, 2018 WL 3998972, at *7 (D. Conn. 2018) *citing Hanover Ins. Co. v. Fireman's Fund Ins. Co.*, 586 A.2d 567, 574 (Conn. 1991) ("The right of action for contribution . . . arises when, as between multiple parties jointly bound to pay a sum of money, one party is compelled to pay the entire sum. That party *may then assert* a right of contribution against the others for their proportionate share of the common obligation.") (emphasis added). A claim for contribution is premature when judgment has not yet been obtained. *See Kemper Independence Ins. Co. v. Superior Plus Energy Services*, CV146017269,

13

2016 WL 5009632, *2 (Conn. Super. Ct., J.D. Ansonia-Milford, Aug. 10, 2016) (striking contribution count as premature).

Madsen does not cite cases to the contrary. I, therefore, dismiss the claim for contribution. I also decline to allow Madsen to replead this claim, because doing so would be futile at this stage.

## III.     CONCLUSION

For the foregoing reasons, WKA's motion to dismiss, ECF No. 148, is GRANTED in part and DENIED in part. The cross-claim for apportionment (Count Three) may proceed. The cross-claims for indemnification (Count Two) and contribution (Count Three) are dismissed. IT IS SO ORDERED.


_____/s/_____

Michael P. Shea, U.S.D.J.


Dated:  Hartford, Connecticut

        September 16, 2020